1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

7

8

9

10

11

NORTH PACIFIC INSURANCE
COMPANY,

                         Plaintiff,

     v.

TRAVELERS CASUALTY
INSURANCE COMPANY OF
AMERICA,

                        Defendant.

CASE NO. C15-5396 BHS

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

12

13

14

     This matter comes before the Court on the parties' cross-motions for summary

judgment (Dkts. 9, 19).[1]  The Court has considered the pleadings filed in support of and

in opposition to the motions and the remainder of the file and hereby rules as follows:

15

### I. PROCEDURAL HISTORY

16

17

18

19

     On June 10, 2015, Plaintiff North Pacific Insurance Company ("North Pacific")

sued Defendant Travelers Casualty Insurance Company of America ("Travelers").  Dkt. 1

("Comp.").  North Pacific seeks a declaratory judgment that Travelers must reimburse

20

21

22

---

[1] Travelers originally filed its motion under Federal Rule of Civil Procedure 12(b)(6).
Dkt. 9.  The parties later asked the Court to treat Travelers' motion as one for summary
judgment.  Dkt. 22 at 2; Dkt. 23 at 1.  The Court will therefore treat the parties' respective
motions as cross-motions for summary judgment to be decided on the full record.

North Pacific for the cost of defending and indemnifying a common insured.  *Id.* ¶ 6.4.
North Pacific also brings claims for equitable contribution, unjust enrichment/estoppel,
and subrogation.  *Id.* ¶¶ 6.5–6.15.

On August 3, 2015, Travelers moved for summary judgment.  Dkt. 9.  On August
24, 2015, North Pacific responded.  Dkt. 10.  On August 28, 2015, Travelers replied.
Dkt. 11.  On October 15, 2015, North Pacific moved for summary judgment.  Dkt. 19.
On November 2, 2015, Travelers responded.  Dkt. 23.  On November 6, 2015, North
Pacific replied.  Dkt. 25.

## II. FACTUAL BACKGROUND

**A.     The Lease**

Jeff Talamantes ("Talamantes") owned a commercial building in Vancouver,
Washington.  Dkt. 20, Declaration of Robert Carr ("Carr Dec."), Ex. 3 at 106.
Talamantes leased the building to 3 Sheets LLC ("3 Sheets").  *Id.*  3 Sheets, in turn,
operated a sports bar on the premises called Main Street Events Sports Grill ("Sports
Grill").  *Id.* at 108.  The lease provides that Talamantes "will maintain the exterior of the
building, including the roof."  *Id.*

**B.     The Insurance Policies**

Travelers issued a commercial insurance policy to Talamantes.  Dkt. 24,
Declaration of Jessica Kincaid ("Kincaid Dec."), Ex. A.  The Travelers policy provides
commercial general liability coverage for "those sums that the insured becomes legally
obligated to pay as damages because of 'bodily injury' or 'property damage' to which

this insurance applies." *Id.* at 80.  The Travelers policy includes an "other insurance"

clause, which details when insurance is excess:

**4.      Other Insurance**

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.      Primary Insurance**

> This insurance is primary except when **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b.      Excess Insurance**

> This insurance is excess over:

>> (1)      Any of the other insurance, whether primary, excess, contingent or on any other basis:

>> *      *      *

>> That is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy.[2]

*Id.* at 90, 100.

North Pacific issued a commercial insurance policy to 3 Sheets.  Carr Dec., Ex. 2.

The North Pacific policy provides business liability coverage for "those sums that the

---

[2] An endorsement to the Travelers policy added this language as an additional subparagraph under Clause 4.b(1).  *See* Kincaid Dec., Ex. A at 100 ("The following is added to Paragraph **b. Excess Insurance**, as an additional subparagraph under Subparagraph **(1)** . . . ."). The Court has set forth the operable language, as modified by the endorsement.  *See id.*

1   insured becomes legally obligated to pay as damages because of 'bodily injury,'

2   'property damage' or 'personal and advertising injury' to which this insurance applies."

3   *Id.* at 46.

4        The North Pacific policy names Talamantes as an additional insured, but "only

5   with respect to liability arising out of the ownership, maintenance or use of that part of

6   premises leased to [3 Sheets]."  *Id.* at 92.  The policy also includes an "other insurance"

7   clause, which details when insurance is excess:

8        **H.    Other Insurance**

9             1.    With respect to insurance provided under Section I—
                     Property:[3]

10                           *        *        *

11            2.    Business Liability Coverage is excess over:

12                  a.    Any other insurance that insures for direct physical
13                        loss or damage; or

14                  b.    Any other primary insurance available to you covering
                          liability for damages arising out of the premises or
15                        operations for which you have been added as an
                          additional insured by attachment of an endorsement.

16  *Id.* at 62, 68.

17  **C.    The Accident**

18        Tyler Hooper ("Hooper") visited the Sports Grill on August 21, 2011.  Carr Dec.,

19  Ex. 1.  While inside the Sports Grill, Hooper lost his balance and fell against a nearby

20  _____

21        [3] An endorsement to the North Pacific policy amended Clause H.1.  *See* Carr Dec., Ex. 2
    at 68 ("Paragraph **H.1. Other Insurance** is replaced by the following . . . .").  The Court has set
22  forth the operable language, as modified by the endorsement.  *See id.*

1  window. *Id.* at 3.  The window was not made of safety glass, and it shattered into large

2  pieces. *Id.*; *see also* Carr Dec., Ex. 4.  Hooper fell through the window and onto the

3  sidewalk outside the Sports Grill.  Carr Dec., Ex. 1 at 3.

4       At the time of the accident, Samantha Adams ("Adams"), a Sports Grill employee,

5  was standing outside on the sidewalk next to the window Hooper fell through. *Id.*

6  Adams saw that Hooper was injured, and began to assist him. *Id.*  While Adams was

7  helping Hooper, "a large piece of the window's glass dropped from above, slicing

8  through [Adams's] left arm down to the bone." *Id.*

9  **D.  The Underlying Suit**

10       Adams filed a personal injury complaint against Talamantes. *Id.* at 2.  Adams

11  alleged the window was not made of safety glass and had not been treated in any way to

12  prevent it from shattering. *Id.* at 3.  Adams further alleged Talamantes knew or should

13  have known: (1) "that the premises were used as a sports bar and that customers would be

14  drinking in the [Sports Grill];" (2) "that based on the location and/or layout of the booths

15  and windows that customers or others could easily stumble into the windows;" and (3)

16  "that the condition of the premises created a significant danger of injury to the public."

17  *Id.*  Adams did not name 3 Sheets as a defendant. *Id.* at 1.

18       Talamantes tendered Adams's claim to Travelers.  Comp. ¶ 4.6.  Travelers then

19  tendered Talamentes's defense to North Pacific in a letter invoking additional insurance

20  coverage.  Carr Dec., Ex. 5.  North Pacific accepted Talamantes's defense as a potential

21  additional insured, subject to a reservation of rights.  Carr Dec., Ex. 6.  North Pacific

22  reached a settlement with Adams, which relieved Talamentes of liability for $200,000.

1   Carr Dec., Exs. 12, 13.  Adams's suit against Talamantes was subsequently dismissed

2   with prejudice.  Carr Dec., Ex. 14.

3                                 **III. DISCUSSION**

4          North Pacific seeks reimbursement from Travelers under two alternate theories.

5   Dkt. 19.  First, North Pacific argues Travelers must completely reimburse North Pacific

6   for defending and indemnifying Talamantes because the North Pacific policy does not

7   provide coverage to Talamantes.  *Id.* at 2.  Second, North Pacific argues Travelers must

8   reimburse North Pacific for half of the expenses because of the "other insurance" clauses

9   in the parties' respective policies.  *Id.*  Travelers denies any duty to contribute.  Dkts. 9,

10  23.

11  **A.     Summary Judgment Standard**

12         Summary judgment is proper only if the pleadings, the discovery and disclosure

13  materials on file, and any affidavits show that there is no genuine issue as to any material

14  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

15  The moving party is entitled to judgment as a matter of law when the nonmoving party

16  fails to make a sufficient showing on an essential element of a claim in the case on which

17  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

18  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

19  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

20  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

21  present specific, significant probative evidence, not simply "some metaphysical doubt").

22  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

1    if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

2    jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

3    U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

4    626, 630 (9th Cir. 1987).

5           The determination of the existence of a material fact is often a close question.  The

6    Court must consider the substantive evidentiary burden that the nonmoving party must

7    meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

8    U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

9    issues of controversy in favor of the nonmoving party only when the facts specifically

10   attested by that party contradict facts specifically attested by the moving party.  The

11   nonmoving party may not merely state that it will discredit the moving party's evidence

12   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

13   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

14   nonspecific statements in affidavits are not sufficient, and missing facts will not be

15   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

16   **B.     North Pacific Policy Coverage**

17          The first issue before the Court is whether the North Pacific policy provides

18   coverage to Talamantes with respect to the underlying suit.  North Pacific contends the

19   underlying suit does not fall under its policy, and thus Travelers must completely

20   reimburse North Pacific.  Dkt. 10 at 2–4; Dkt. 19 at 10.  Travelers disagrees, arguing the

21   underlying suit falls within the policy's coverage language.  Dkt. 9 at 6–7; Dkt. 23 at 8.

22

1  To resolve this issue, the Court first turns to the language in the North Pacific

2  policy.  In Washington, the interpretation of insurance policies is a question of law.  *Am.*

3  *Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874 (1993), *opinion supplemented by* 123 Wn.2d

4  131 (1994).  Washington courts construe insurance policies as a whole, giving force and

5  effect to each clause in the policy.  *Id.*  If the policy language is clear and unambiguous,

6  the Court will not modify the policy or create an ambiguity.  *Id.*  If the policy language is

7  fairly susceptible to two different reasonable interpretations, it is ambiguous, and the

8  Court may attempt to discern the parties' intent by examining extrinsic evidence.  *Id.*  If

9  the policy remains ambiguous after resort to extrinsic evidence, the Court construes the

10  ambiguities against the insurer.  *Id.* at 874–75.

11  The North Pacific policy names Talamantes as an additional insured, but limits

12  coverage "to liability arising out of the ownership, maintenance or use of that part of the

13  premises leased to [3 Sheets]."  Carr Dec., Ex. 2 at 92.  The parties dispute whether

14  Talamantes's liability in the underlying suit "arises out of" the ownership, maintenance,

15  or use of the premises leased to 3 Sheets.

16  Under Washington law, the phrase "arising out of" has a broad meaning in the

17  insurance context.  *Seaway Props., LLC v. Fireman's Fund Ins. Co.*, 16 F. Supp. 3d 1240,

18  1251 (W.D. Wash. 2014); *Equilon Enters. LLC v. Great Am. Alliance Ins. Co.*, 132 Wn.

19  App. 430, 437–38 (2006).  The phrase is unambiguous and encompasses more than

20  "caused by" or "resulted from."  *Australia Unlimited v. Hartford Cas. Ins. Co.*, 147 Wn.

21  App. 758, 774 (2008).  "It ordinarily means 'originating from,' 'having its origin in,'

22  'growing out of,' or 'flowing from.'"  *Id.*  "The phrase requires only a causal

1  contribution, and means less than 'proximately caused by.'"  *Seaway Props.*, 16 F. Supp.
2  3d at 1251.

3      Although several Washington cases illustrate the broad meaning of "arising out
4  of," the Washington Court of Appeals' decision in *Equilon* is particularly instructive
5  because it involves a similar "additional insured" clause.  In *Equilon*, a fuel distributor
6  contracted with an oil company to distribute fuel to gas stations.  132 Wn. App. at 433.
7  Under the contract, the fuel distributor could use the oil company's signs at the gas
8  stations to sell fuel.  *Id.*  The fuel distributor also named the oil company as an additional
9  insured on its commercial general liability policy, but "only with respect to liability
10  arising out of [the fuel distributor's] operations or premises owned by or rented to [the
11  fuel distributor]."  *Id.* at 434.

12      The *Equilon* court analyzed the "arising out of" language with respect to a suit
13  brought by a young man against the oil company.  *Id.*  The young man was assaulted at
14  one of the gas stations the fuel distributor supplied.  *Id.*  The young man sued the oil
15  company, alleging the company was liable for the gas station's acts under agency
16  principles.  *Id.*  There was some evidence the young man believed the gas station had
17  adequate security because of the oil company's signs on the premises.  *Id.* at 435.  After
18  discussing the broad meaning of "arising out of," the court concluded the oil company
19  was covered under the "additional insured" clause.  *Id.* at 437–38.  In reaching this
20  conclusion, the court explained that the "presence of the signs was an aspect of [the fuel
21  distributor's] ongoing operations" and therefore the oil company's liability "arose out of"
22  the fuel distributor's operations.  *Id.* at 439.

1    In this case, the Court finds Talamantes's liability in the underlying suit "arises out

2    of" the ownership, maintenance, or use of the premises leased to 3 Sheets.  Adams sued

3    Talamantes for the injuries she sustained while assisting Hooper.  Although Adams was

4    outside the Sports Grill when she was injured, the liability-causing accident originated

5    from inside the leased premises—Hooper was a customer inside the Sports Grill when he

6    fell through the window.  Moreover, Adams alleged Talamantes was liable because he

7    should have known the premises were being used as a sports bar and that customers could

8    fall into the windows.  Under these circumstances, a causal connection exists between

9    Talamantes's liability and the Sports Grill.  In Washington, this causal connection is

10   sufficient to establish that Talamentes's liability "arose out of" the use of the leased

11   premises.  The Court therefore concludes North Pacific's policy provides additional

12   insured coverage to Talamantes.

13   **C.    "Other Insurance" Clauses**

14   The second issue before the Court is whether Travelers must reimburse North

15   Pacific under the parties' respective "other insurance" clauses.  North Pacific claims both

16   policies provide excess coverage and thus Travelers must partially reimburse North

17   Pacific.  Dkt. 19 at 17–21.  In response, Travelers argues it does not need to contribute

18   because the North Pacific policy provides primary coverage and the Travelers policy

19   provides excess coverage.  Dkt. 23 at 12.

20   The Court turns again to the relevant policy language.  Under the Travelers "other

21   insurance" clause, the policy is excess over "[a]ny other insurance, whether primary,

22   excess, contingent or on any other basis . . . that is available to the insured when the

insured is added as an additional insured under any other policy, including any umbrella or excess policy." Kincaid Dec., Ex. A at 100. Talamantes was named as an additional insured on the North Pacific policy. *See* Carr Dec., Ex. 2 at 92. Under the plain language of this "other insurance" clause, the Travelers policy is excess over the North Pacific policy. *See* Kincaid Dec., Ex. A at 100.

With regard to the North Pacific policy, the "other insurance" clause provides that liability coverage is excess in two situations. Under Clause H.2(a), the policy is excess over "any other insurance that insures for direct physical loss or damage." Carr Dec., Ex. 2 at 62. Under Clause H.2(b), the policy is excess over "any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." *Id.* The parties agree Clause H.2(b) does not apply in this case. Dkt. 19 at 17; Dkt. 23 at 10.

North Pacific argues Clause H.2(a) applies because the Travelers policy covers the same "damages" as the North Pacific policy. Dkt. 19 at 18. North Pacific's argument, however, substitutes the word "damages" for the word "damage." This distinction is key. The word "damages" does not appear in Clause H.2(a). Rather, the clause makes the North Pacific policy excess to "any other insurance that insures for *direct physical loss or damage*." Carr Dec., Ex. 2 at 62 (emphasis added).

The North Pacific policy differentiates between "damages" and "damage" throughout the policy. *See Ibrahim v. AIU Ins. Co.*, 177 Wn. App. 504, 515 (2013) ("An insurance contract must be viewed in its entirety and a court cannot interpret a phrase in

1    isolation." (internal quotation marks omitted)).  Notably, the policy uses "damages" in

2    the liability coverage section and "damage" in the property coverage section.  The policy

3    provides liability coverage for "*sums that the insured becomes legally obligated to pay as*

4    *damages* because of 'bodily injury,' 'property damage' or 'personal and advertising

5    injury.'"  Carr Dec., Ex. 2 at 46 (emphasis added).  Meanwhile, the policy provides

6    property coverage for "*direct physical loss of or damage* to Covered Property."  *Id.* at 21

7    (emphasis added).

8          Based on this language, "damages" has a different meaning than "damage" in the

9    North Pacific policy.  "Damages" refers to money owed to a plaintiff because of an injury

10   or harm, while "damage" refers to injury to property.  As noted above, Clause H.2(a)

11   pertains to "direct physical loss or damage" rather than "damages.'"  *See* Carr Dec., Ex. 2

12   at 62.  Clause H.2(a) therefore applies to property coverage, which is not at issue in this

13   case.  For these reasons, the Court concludes Clause H.2(a) is not applicable.[4]

14         In the absence of an applicable "other insurance" clause that makes North

15   Pacific's policy excess, the North Pacific policy is primary.  *See Diaz v. Nat'l Car Rental*

16   *Sys., Inc.*, 143 Wn.2d 57, 62 (2001) (defining "primary insurance" as "insurance that

17   attached immediately on the happening of the loss").  Because the North Pacific policy is

18   primary and the Travelers policy is excess, Travelers does not need to reimburse North

19

20   _____

21         [4] Notably, North Pacific initially conceded Clause H.2(a) was not applicable in its
     response to Travelers' motion.  *See* Dkt. 10 at 11.  North Pacific then changed its interpretation
22   of Clause H.2(a) in its motion for summary judgment.  *See* Dkt. 19 at 17–18.

1   Pacific for the defense or settlement of the underlying suit until the North Pacific policy

2   is exhausted.[5]

3                               **IV. ORDER**

4        Therefore, it is hereby **ORDERED** that Travelers' motion for summary judgment

5   (Dkt. 9) is **GRANTED** and North Pacific's motion for summary judgment (Dkt. 19) is

6   **DENIED**.  The Clerk shall close this case.

7        Dated this 6th day of January, 2016.

8

9

10                                     BENJAMIN H. SETTLE
                                  United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22       [5] Having resolved the parties' cross-motions in Travelers' favor, the Court need not address North Pacific's request for *Olympic Steamship* fees.